Mr. Chief Justice Sharkey
delivered the following opinion.
This was an action of ejectment, in which the plaintiff below recovered a verdict. The defendant moved for a new •trial, and on its being overruled, excepted. Several depositions were offered in evidence, which, although copied by the clerk, are not incorporated in the bill of exceptions. Whether the verdict was or was not contrary to the evidence, is a question that cannot .be determined, as all the evidence is not properly presented. Our inquiries will therefore be confined to the propriety. of the decisions in admitting, or in excluding such evidence as has been inserted in the bill of exceptions, and also as to the correctness of the charges given. It has been insisted, however, for the defendant in error, that as no bill of exceptions was taken to the introduction of evidence at the time it was *47 offered, no question can be raised on it afterwards. This is a misapprehension of the rule. If no objection is made to it.s admission, the party is supposed to waive objections, and is concluded. But if its admission be objected to, such objection, if it be overruled,'may be made the ground of an application for a new trial; and if it appear by the bill of exceptions taken on the motion for a new trial, that an objection was made when the evidence was offered, it will be sufficient. The doctrine in regard to bills of exceptions, as now in force, was considered in the case of Phillips v. Lane, 4 How. 122, to which it is sufficient to refer.
The errors assigned are, that the court permitted evidence to go to the jury which should have been excluded ; that the court refused to charge the jury as requested for defendant; and that the motion for a new trial was improperly refused.
We find in the bill'of exceptions an agreement that both parties derived title from William Foster, and that his title would therefore be admitted.
The plaintiff below commenced his proof by introducing a deed from Foster, which bears date the 4th of April, 1831. This was objected to because it is said to be without a seal", and the case of Bohannon v. Hough, Walk. R. 461, and other authorities are relied on. The name of the grantor is placed opposite to a circular scroll, in which the word “seal” is written. The statute declares that where a scroll is attached to any instrument by way of seal, it shall have the same force as though the instrument were really sealed. This statute authorizes parties to adopt a more convenient mode of sealing instruments, by substituting a scroll for wax, and wherever it is manifest that the scroll was intended to be used “ by way of seal,” it must have the effect, wheth.er it so appears from the body of the instrument, or from the scroll itself. How. & Hutch. Dig. 617. This is the obvious meaning of the statute. The deed was therefore sufficiently perfect in this respect.
The plaintiff introduced also a second deed from Foster, bearing date the 11th of March, 1836, which recites the former deed, and describes the land with more particularity, according to *48 the public surveys, which had been made in the meantime, as was stated by a witness, and so recited in the deed. This instrument, although not strictly a confirmation, professes to confirm McGuire in his previous right, which is admitted to have been an absolute and complete conveyance, except that the land was imperfectly described, for the reason given. A confirmation is only used to perfect an imperfect title. This too was objected to, for this reason; it was not regularly proved and recorded until May, 1839, nearly three years after its execution, and it is therefore said that it was not proven and delivered for record within three months, as the statute requires, it should not have been received without proof of its execution by the subscribing witnesses. The statute declares that all deeds properly proved and delivered for record, within three months, shall take effect from their date; but the same section declares that deeds not delivered to be recorded within three months, shall take effect and be valid as to all subsequent purchasers without notice, and as to all creditors, from the time they are acknowledged or proved, and delivered to the clerk for record. The plain import of this provision is, that a deed may be recorded, if properly acknowledged or proved, at any time, and it will stand upon the footing of a deed recorded within three months, except as to the time of its taking effect, which, as to subsequent purchasers without notice, and creditors, is from the time it is delivered for record; but as between vendor and vendee, and purchasers with notice, it still, of course, takes effect from the time of delivery. The rule established by the authorities cited on this point, can have no application under this statute. The plaintiff then introduced other evidence, which was not objected to.
The defendant offered to introduce an article of agreement between Foster, McRaven, Coffee, and Plummer, which is without date, but was acknowledged on the 1st of November, 1834. This instrument contains various clauses and stipulations. It begins by reciting Foster’s right to a section and a half of land under the Choctaw treaty, which had been located on certain sections named, and proceeds to convey the same *49 absolutely to the parties of the second part. Provision was .-made that Foster should deliver immediate possession of the land, except a portion of it, on which he was to reside five years, so as to complete his title and receive a grant from the government; and when received he was to convey to the vendees, McRaven, Coffee, and Plummer, in certain proportions; and they stipulated to pay the residue of the purchase-money, (having paid part) in certain instalments. This instrument was evidently drawn under a supposition that Foster’s title might be imperfect, and that certain conditions were to be performed by him to complete it. Its character may seem rather doubtful. In some of its provisions it is very much like a mere contract to convey at a subsequent period; but it also contains language sufficient to pass Foster’s title, if he had one. The agreement to. convey to the vendees, did not depend upon any condition to be performed by them, nor was there a reservation of title in Foster for his own security. He manifested a willingness and an intention to part with all the right he had; but it was evidently thought that his title might be imperfect; and to meet such a contingency he was to reside on part of the land so as to perfect his title,'and when so perfected, he was to convey to McRaven, Coffee, and Plummer. But this instrument was acknowledged before a deputy clerk of the probate court of Hinds county, and we do not find any power conferred on deputy clerks by statute, to take acknowledgments. It has been insisted that the deputy clerk may do whatever his principal can. That is true only in regard to the duties which the law requires the clerk to perform, in virtue of his office as clerk, but this is no part of the official duty of the clerk. He is not liable on his bond for failing to take an acknowledgment, or for taking it improperly. He is only a person designated by law, before whom an acknowledgment may be taken. A judge does not take an acknowledgment as part of his official duty. The law only says that an acknowledgment may be made, or proof of execution of a deed made, before a clerk. How. & Hutch. Dig. 368. The clerk is responsible for the acts of his deputy, but it will not be contended that *50 if a deputy should take an acknowledgment improperly, the principal is responsible. Bond v. Ward, 7 Mass. R. 123; Gorham v. Gale, 6 Cowen, (note a,) 467. The statute is a special commission or authority, designating no official duty, but only describing a certain person by his office, who, whilst he holds that office, may take the acknowledgment. This deed was therefore properly rejected without proof of its execution.
As there was no error in the admission and rejection of the several deeds, the application for a new trial must turn exclusively on the charges given, and the propriety of rejecting those asked for defendant. The propriety of the decisions in this respect will depend in some degree on the evidence, as charges are always to be given with a view to the state of case before the court.
The plaintiff had offered two deeds, but undertook to establish boundary according to the calls in the second deed, in reference to the calls in which, the survey introduced on the trial was made under an order of court. The first deed is therefore of no use in this controversy, so far as boundary is concerned. The land is described in the second deed as lying “ on the west side of sections six and eight, of township twenty-two, of range eight, west, fronting on the Mississippi river a sufficient distance to make the north-west fractional quarter of section six, and the north-west fractional quarter of section eight contain, by a due south line commencing at a point on the Mississippi river, in the north-east fractional quarter of section six, and from thence due south to a point on the line between the north-east and south-east quarters of section eight, so as to make the aforesaid quantity of three hundred and twenty acres of land.” Instead of literally complying with the calls, the land was laid off by the surveyor in the southwest quarter of section six, and north-west quarter of section eight, which made the land in a solid body; whereas if he had followed the deed, it must have been in two parcels, separated by the south-east quarter of section six. If the land was intended to be conveyed in one body, then there is an evident mistake in description. The court charged the jury in refer *51 ence to this matter, that if there was a mistake as to the northwest and north-east quarter of section six, and that the parties intended the south-west and south-east quarters, and there is sufficient in the deed to identify the land as surveyed by the surveyor as the land intended to be conveyed, such mistake did not invalidate the deed. This charge is not free from difficulty. If the land had been run out when sold, the lines would have established the identity, and a false description would have been immaterial. The question of mistake in a deed was considered in the case of Jackson v. Clark, 7 Johns. 217, and it was said “if there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the deed.” The general rule is, that a false or immaterial description may be rejected, provided there be enough to show clearly what was intended to be granted. It has been decided that when the different parts of a description are contradictory, such parts may be retained and such rejected, as will leave enough to designate plainly the land intended to be conveyed. 1 Paine, 494. The sections, according to law and the public surveys, are divided into quarters and eighths. If section six were an entire section, then it would be too clear to admit of doubt that a deed calling for the north-east quarter, could not be made to convey the south-east quarter. But the surveyor says that this is a fractional section, and has no northeast quarter, by which I suppose we are to understand, that if it were divided as sections usually are, with one hundred and sixty acres to each quarter. According to his survey it is less, altogether, than a half section in quantity, being bounded on the north by the river. But by a map introduced by the defendant, taken from the land office, it appears that there is a north-west fractional quarter of section six. It does not appear however that Foster had any right to convey the south-west quarter of section six. Altogether, the matter seems to be involved in great doubt, and we think the charge of the court was rather too broad, when applied to the facts. But as the defendants had possession of part of the north-west quarter of *52 section eight, which is sufficiently described as intended to be conveyed, the plaintiff was entitled to recover so much, even if he had no right to the south-east quarter of section six as claimed.
The court also charged the jury, that in the absence of any proof that the defendant had any title to the land, he had no right to complain of any adjustment between Foster and the lessor of the plaintiff, as to the land conveyed, or intended to be conveyed ; and that the land agreed upon between them as the land conveyed and intended to be conveyed, is the land actually conveyed; and if the plat made out by the surveyor is in accordance with the understanding of Foster and McGuire, the jury should find for the plaintiff. We cannot assent to. the correctness of this as a legal proposition, that because the defendant in ejectment introduces no proof, that he cannot object to the regularity of the plaintiff’s title, and that the plaintiff can recover according to the intention of himself and his vendor, whether that intention be expressed in a legal shape or not. If this were true, there is no use for paper title at all, in case the defendant does not prove title. Whether the defendant introduces proof of title or not, makes no difference; the plaintiff must still'show a complete title, and identify the land in accordance therewith. On this point we might have rested the case. We have noticed others, because they were discussed, and must, or probably will arise on a second trial.
Judgment reversed, and cause remanded.
Mr. Justice Clayton concurred in the foregoing opinion when it was delivered ; but on one point subsequently changed his views, and concurred with Mr. Justice Thachee ; his opinion, filed afterwards, will be found infra, immediately following Justice ThacheR’s.