PIERCE, Justice,
dissenting:
¶ 29. I find that Cause Number 03-0-969 remains viable, and Judge Hilburn’s order transferring the case to the Attorney General’s Office is valid. Judge Hilburn clearly had the authority and discretion in this instance to rescind his nolle prosequi order for Cause Number 03-0-969 two days after issuing the order during the same term of court. Judge Hilburn likewise had the authority to transfer the case to the Attorney’s General Office once the Hinds County District Attorney thereafter let it be known that his office would not act on the matter (as illustrated by the record), based upon what can only be discerned as the district attorney’s misapprehension of this Court’s decision in Williams v. State, 54 So.3d 212 (Miss.2011). For these reasons, as will be explained, I dissent.
¶ 30. At the outset, the majority finds the question as to whether Judge Hilburn had the authority to rescind his previous nolle prosequi order, not before us. Respectfully, that is the elephant in the room. And the majority practically embraces it, while pretending it is not there. Indeed, the majority’s decision, and entire analysis in support thereof, is premised on the notion that Judge Hilburn did not have the authority to appoint the Attorney’s General Office because Judge Hilburn had entered a nolle prosequi order. But, as the record plainly illustrates, Judge Hilburn appointed the Attorney General’s Office, after he rescinded the previous nolle pro-sequi order and after District Attorney Smith then declined to prosecute the case.[4] Judge Hilburn, as he testified below before Judge Weill, proceeded accordingly be *918 cause Judge Hilburn believed he had the authority and the duty to do so. Judge Weill placed error in Judge Hilburn’s decision to rescind the ¡nolle prosequi because Judge Weill believed that Judge Hilburn did not have such authority. Judge Weill, however, found that Judge Hilburn had authority under the state , constitution to appoint the Attorney’s General’s Office as a special prosecutor in ■ this case. As a matter of common judicial sense and standards, we must first address who was correct on the recision question before reaching any constitutional question put before us. This is a fundamental rule of this Court. See Ferguson v. Watkins, 448 So.2d 271, 285 (Miss.1984) (“Our practice is to avoid reaching constitutional questions if a dispositive non-constitutional ground is available.”) (citation omitted).
¶ 31. The district attorney is an important official, but the people, through their representatives in the Legislature, have not placed the fate of efforts to maintain law and' order entirely in that official’s hands. Where public interest is involved, it is the duty of the court to consider those interests in determining whether or not to nolle prosequi (or dismiss) an action. Mississippi-Code Section 99-15-53 envisages this duty, and the majority fails to take both into consideration.
¶ 32. Section 99 — 15—53, which the majority fails to mention, states in part: “A district attorney, or other prosecuting attorney, shall not compromise any cause or enter a nolle prosequi either before or after indictment found, without consent of the court.” This'is the practice in the majority of jurisdictions and is a departure from the common law, where the power to dismiss a criminal charge, or enter a nolle prosequi, lies in the sole discretion' of the prosecutor. U.S. v. Cowan, 524 F.2d 504, 509-10 (5th Cir.1975). The purpose is two fold. One, the requirement protects the rights of- a criminal defendant. See, e.g., Rinaldi v. United States, 434 U.S. 22, 29 n. 15, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (per curiam) (speaking to the “leave of court” requirement prescribed by Federal Rule of Criminal Procedure 48(a) (counterpart' to Section 99-15-53) which protects a defendant against prosecutorial harassment). Two, it protects the public interest. Cowan, 524 F.2d at 510-13 (Federal Rule of Civil Procedure 48(a)’s “leave of court” requirement also serves to protect the public interest in the fair administration of criminal justice).
¶ 33. In speaking to the latter, Cowan, one of the leading authorities on Federal Rule 48(a)’s “leave of court” requirement, noted numerous state cases. Cowan said, “state case law interpreting [modification of the common law] is sparse, but what there is of it consistently affirms the power and duty of the court to exercise discretion to grant or withhold leave to dismiss pending criminal prosecutions in the ‘the public interest.’ ” One of the state cases cited by Cowan was Shipp v. State, 215 Miss. 541, 61 So.2d 329 (1952), abrogated on other grounds by Addkison v. State, 608 So.2d 304 (Miss.1992). In Shipp, the district attorney moved the trial court for a nolle prosequi on a criminal defendant’s indictment for larceny after the defendant was diagnosed before trial with schizophrenia by psychiatrists at the state hospital. Id. at 546-47, 61 So.2d 329. The trial court denied the nolle prosequi motion and ordered that the defendant be brought to trial. The Shipp Court, citing Section 2566, Code of 1942 (predecessor to Section 99-15-53), did not question the trial court’s decision to refuse the district attorney’s nolle prosequi request. Id. at 552, 61 So.2d 329. Rather, the Shipp Court found reversible error in the trial court’s refusal to try the issue of -insanity preliminarily. Id. at 551, 61 So.2d 329.
*919 ¶ 34. Since Shipp, this Court has addressed Section 99-15-53’s consent requirement in a limited number of cases, most of which involved plea agreements between the State and the defendant. See State v. Adams Cnty. Circuit Court, 735 So.2d 201, 204 (Miss.1999) (holding that the trial court abused its discretion in denying the State leave to dismiss indictments after the defendants had relied detrimentally on plea agreement); Moody v. State, 716 So.2d 592, 594 (Miss.1998) (trial court abused its .discretion in rejecting a plea agreement in murder case based on the trial court’s desire that the defendant receive not less than the death penalty); Edwards v. State, 465 So.2d 1085, 1086 (Miss.1985) (trial court abused .its discretion in not quashing the defendant’s indictment in light of the defendant’s detrimental reliance on an agreement with the district attorney). The Edwards Court qualified its holding by reiterating that the trial court is not bound by every plea agreement because the plea agreement remains a function of the trial court’s discretion. Id. at 1086.
¶ 35. Indeed, both Shipp and Edwards implicitly acknowledged there exists a public-interest concern, which the trial court has a duty to take into consideration in its decision to grant or deny a nolle prosequi
¶ 36. This Court spoke to this charge in State v. U.G., 726 So.2d 151 (Miss.1998). In that case, a fourteen-year old defendant had been indicted for armed robbery. Id. at 152. Upon motion from the defendant, the circuit court transferred the case to youth court. Id. at 153. Thé State appealed, and we reversed the circuit-court judgment for failure to consider the “public interest” before transferring the ease. Id. at 156. We first cited Mississippi Code Section 43-21-159(3) (now Section 43-21-159(4)), which reads in part as follows:
■In any case wherein the defendant is a child as defined in this chapter and of which the circuit court has original jurisdiction, the circuit judge, upon a finding that it would be in the best interest of such child and in the interest of justice, may at any stage of the proceedings prior to the attachment of jeopardy transfer such proceedings to the youth court for further proceedings....
Miss.Code Ann. § 43-21-159(4) (Rev. 2009). Next, we explained that, “[n]eitlier the best interest of the child nor the ‘interest of justice’ overrides the 'other, but they can be separate interests and must be given full' review by the circuit' court” U.G., 726 So.2d at 155. We found that while the circuit court properly took into consideration the minor’s best interest(s), the court “failed to properly address the issue of - the ‘interest of justice’ — the public’s'interest.” Id. at 155-56. We added that the trial court “is mandated by statute to consider matters beyond the interest of the child[;] [t]he lower court must also review issues before it from an ‘interest of justice’ or public interest view point.”" Id. “Thé ’ State has a duty to represent the public’s interest in prosecuting violent criminals, no matter what their age.” ' Id. at 156.
¶ 37. I see no’ distinction between the mandates of Section 43-21-159(4) and Section 99-15-53.
¶ 38. Here, according to the record, after we reversed and remanded William’s conviction, the new district attorney, Robert Smith (who had succeeded the former Hinds County District Attorney Faye Peterson, who had prosecuted this case) discussed:the-case with his assistants. According to former Assistant District Attorney Keith Gates, who -testified at the hearing before Judge Weill, Smith had debated whether, -since the case had been “remanded with new evi *920 dence that [had] come in, whether the [S]upreme [C]ourt was saying it should be allowed in court.” Gates said the only new evidence that he, Gates, knew about was that the bouncer at the club where the shooting had occurred had seen the decedent with a gun earlier that evening. Smith ultimately decided that the case should be nolle prossed. Gates said when he later presented the nolle prosequi motion to Judge Hilburn, Judge Hilburn was not happy about it and wanted to talk to Smith. Gates said he told Judge Hilburn that this is something that Judge Hilburn and Smith needed to talk about because he, Gates, was just relaying the message. Gates testified that Judge Hilburn signed the nolle prosequi order at that point.
¶39. Judge Hilburn testified at the hearing in front of Judge Weill, that a nolle prosequi order had been presented to him after Williams’s conviction was reversed and remanded by this Court. Judge Hilburn could not recall how the order was presented, but he stated that there was no procedure concerning the order. Judge Hilburn signed the order. As mentioned, after looking at the order later, Judge Hilburn realized that statements were made in the order that “were absolutely untrue” with regard to exhibits containing affidavits from witnesses whom Judge Hilburn had never seen. . So Judge Hilburn found that the nolle prosequi order was not correct, and he withdrew it. Judge Hilburn testified that, because the term of court had not yet ended, he believed that he had the authority to reverse his previous order. After reversing the order, Judge Hilburn went to Smith’s office and told Smith that he had withdrawn the order. Judge Hilburn said Smith told him that his office was not going to prosecute the case. Judge Hilburn told Smith that the Attorney General’s Office had expressed a desire to prosecute the case, and that Smith had said, “I don’t care.” Judge Hilburn subsequently signed and entered an order, entitled “Order to Recuse” which was signed by a Hinds County assistant district attorney.
¶ 40. Judge Hilburn did exactly what he was required and expected to do by law. Judge Hilburn had a duty to review and consider the “alleged” new evidence that formed the basis for the district attorney’s nolle prosequi request. Review of this new evidence shows that it merely comprises character evidence as to the decedent’s violent nature. By no means can this new evidence be characterized as exoneration evidence. Contrary to the majority’s finding(s) otherwise, Judge Hil-burn did provide a valid reason for rescinding the order. Implicit in his decision to rescind the order was a public-interest determination, which, again, Judge Hilburn had a legal duty to consider.
¶ 41. As Judge Hilburn correctly explained at the hearing in this matter, the circuit court, as a court of record, has inherent control of “all judgments, decrees, or orders of the court during the term at which they are rendered”; accordingly, the circuit court has full power to set aside or modify any judgment, decree, or order so rendered during that term of court. Mutual Health & Benefit Ass’n v. Cranford, 173 Miss. 152, 156 So. 876, 877 (1934). While there is no Mississippi case on point, several other jurisdictions have dealt with the issue of a trial court’s authority to rescind a previously approved nolle prose-qui order. In People v. Watson, 394 Ill. 177, 68 N.E.2d 265 (1946), the Illinois Supreme Court reasoned that:
Courts of general jurisdiction have inherent authority, during the term, to vacate any judgment or order that may have been made at that term. This was the rule at common law and prevails in *921 most jurisdictions. Considering then that a court has the inherent power to set- aside judgments and orders made during the term, can any sound argument be advanced why a court has not the power to set aside a dismissal of an indictment or information and reinstate the case during the term at which the dismissal was entered? The general rule is that a nolle prosequi or a dismissal of a criminal charge, if made pri- or to the time a jury is impaneled and sworn, is not a bar to a subsequent prosecution for the same offense. There is no difference, so far as the defendant’s rights are concerned, whether, after the dismissal of a charge, a new information or indictment is filed or the order of dismissal set aside and defendant tried on the old information or indictment. An order of dismissal or a nolle prosequi in a criminál case may be set aside during the term at which the order is made.
Id. at 181, 68 N.E.2d 265. Similar reasoning has been employed in other jurisdictions, including the Ninth Circuit Court of Appeals, Georgia, Missouri, Pennsylvania, and Arizona. United States v. Emens, 565 F.2d 1142, 1144-45 (9th Cir.1977) (dismissal of indictment); Buice v. State, 239 Ga.App. 52, 520 S.E.2d 258, 262 (1999); State v. Montgomery, 276 S.W.2d 166, 167-68 (Mo.1955); Commonwealth v. Ashe, 138 Pa.Super. 222, 227-28, 11 A.2d 173 (1940); Condos v. Superior Court for Maricopa County, 29 Ariz. 186, 190-91, 239 P. 1032 (1925) (dismissal of aetion).
¶ 42. Given Mississippi precedent adhering to the common-law rule that “all judgments, decrees or [court orders], however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record and may then be set aside, vacated, modified, or annulled by that court”,[5], [6] I find that Judge Hilburn indeed had the authority to rescind the previously approved nolle pro-sequi order based on the reasons Judge Hilburn stated for the record, first, at Williams’s motion-to-dismiss hearing (over which Judge Hilburn presided) and then at the hearing before Judge Weill.
¶ 43. After Judge Hilburn rescinded the nolle prosequi order, Smith informed Judge Hilburn that his. office would-not prosecute the matter. At that point, Smith became “absent” for purposes of Mississippi Code Section 25-31-21, which contemplates such a circumstance. Judge Hilburn then acted accordingly to law.
¶ 44. For these reasons, I dissent. I would reverse Judge Weill’s order dismissing cause number 03-0-969, and reinstate and affirm Judge Hilburn’s order transferring the matter to the Attorney General’s Office.
*922 WALLER, C.J., AND RANDOLPH, P.J., JOIN THIS OPINION. . COLEMAN, J., JOINS THIS OPINION IN PART.

, To be clear, Judge Hilburn testified before Judge Weill that he rescinded the nolle prose-qui order, drafted by the District Attorney’s Office, after Judge Hilburn realized there were statements made in the order that were "absolutely untrue.” Judge Hilburn then went to the District Attorney's office and told him he had withdrawn the order. According to Judge Hilburn, District Attorney Smith said he was not going to prosecute the case. Judge Hilburn then told District Attorney Smith that the Attorney General’s Office had expressed a desire to prosecute the case. To which District Attorney Smith replied, "I don't care.”

. Cranford, 156 So. at 877 (quoting Bronson v. Schulten, 104 U.S. 410, 26 L.Ed. 797 (1881)). The Cranford Court also cited McRaven v. McGuire, 17 Miss. 34 (1847), in which it was recognized that the same principle applies to decisions rendered by the Mississippi Supreme Court. In McRaven, it was said: "During the term the judgments of that term are always under control of the court; of course the opinions of each or either of the [justices], may be recalled, and changed, if he becomes satisfied of error.” McRaven, 17 Miss. 34.

. See also Robinson v. State, 585 So.2d 757, 758 (Miss.1991) (rejecting claim that a second sentence entered by the trial court was invalid because original sentence was a final judgment.) Citing Jones v. Index Drilling Co., 251 Miss. 578, 170 So.2d 564 (1965), and Bronson, 104 U.S. 410, 26 L.Ed. 797, the Robinson Court reiterated the general rule that all judgments or other court orders "may be set aside, vacated, modified or annulled” by that court during the term at which they are rendered. Robinson, 585 So.2d at 758.